### CONTINENTAL COAL CO. v. BOWNE.

### BOWNE v. CONTINENTAL COAL CO.

(Circuit Court of Appeals, First Circuit. April 24, 1902.)

### Nos. 424, 425.

SHIPPING—CONSTRUCTION OF BILL OF LADING—SPECIAL DEMURRAGE.

A clause of a charter party or bill of lading providing that, **after** arrival and notice to the consignee, the vessel shall have precedence in discharging over all vessels arriving or giving notice after her arrival, and stipulating for special demurrage in case of a violation of such provision, is in the nature of one for a penalty, which should not be imposed unless the case comes clearly within the purpose which it intended to accomplish; and where the original consignee of the cargo, to whom notice of arrival was given, refused to receive it, and the master was instructed by the shipper to deliver to another, the latter became from that time the consignee, for the purposes of such clause, and the special demurrage is not recoverable because precedence in discharging was given to another vessel, through the action of the original consignee, after its refusal to accept the cargo.

Appeal from the District Court of the United States for the District of Rhode Island.

William B. Greenough, for Continental Coal Company.

Frank Healy (Archibald C. Matteson, on the brief), for William B. Bowne.

Before COLT and PUTNAM, Circuit Judges, and WEBB, District Judge.

PUTNAM, Circuit Judge. This is a question of demurrage. By the bill of lading, a lien was reserved against the cargo, not only for freight, but for demurrage. Both parties have appealed. The leading facts are stated in the opinion passed down in the district court. Questions arising from the same forms of charter party and bill of lading were raised in "1,755 Tons of Cumberland Coal," decided by us on March 4, 1902 (Evans v. Blair, 114 Fed. 616).

One question is whether any demurrage should have been allowed. The district court allowed it at the ordinary rate, and the appeal of the Continental Coal Company is against this allowance. It is based on two propositions. R. B. Little & Co., the consignees named in the bill of lading, refused to receive the cargo. Thereupon communication was had with the shipper, which was the Continental Coal Company; and it is claimed that the shipper promptly telegraphed

115 F.—60

the master of the vessel to deliver to the Providence Coal Company, that the master was absent, and that if he had not been absent, and had attended immediately to delivery, the cargo could have been discharged in season to have avoided demurrage. It is true that the master went to his home over Sunday; that he did not provide for proper attention to telegrams, as he should have done; and that the dispatch from the Continental Coal Company was received on the afternoon of Saturday, when he was absent. Nevertheless, on his return on Monday morning he was ready to attend to the delivery of his cargo; but there was no person ready to pay his freight or guaranty his demurrage, and the duplicate bill of lading was not at hand. This last was necessary, because R. B. Little & Co. had merely refused to receive the cargo, and had not signified the status of the duplicate bill of lading, so that in its absence the master could not be sure of right delivery. Therefore it follows that no detriment came to the Continental Coal Company from his absence over Sunday.

During Monday or Tuesday the master was satisfied with reference to the freight and demurrage, and the duplicate bill of lading was at hand. At this point, however, the Continental Coal Company claims that the master delayed docking his vessel. The record is obscure on the question whether this delay was caused by the master, or by the fault of the Providence Coal Company, which, acting for the Continental Coal Company, had agreed to notify the master, through the tugs which were to dock the vessel, when it would be ready to receive delivery; but it is clear that this is not essential, because the crucial delay was caused by the fact that a coal-laden barge was already discharging at the same dock, and that both vessels could not be there unladen simultaneously. On the whole, we are of the opinion that the decree of the district court in allowing demurrage was correct.

The appeal of William B. Bowne, who represents the vessel, is against the refusal to allow special demurrage under the following clause:

"After arrival and notice to the consignee as aforesaid, and the expiration of said twenty-four hours, said vessel shall have precedence in discharging over all vessels arriving or giving notice after her arrival; and for any violation of this provision she shall be compensated in demurrage as if while delayed by such violation her discharge had proceeded at the rate of three hundred tons per day."

This clause is in the nature of a penalty, so that it ought not to be imposed unless the case comes clearly within the purpose which it intended to accomplish. That is the preventing of unjust discrimination. It has no proper relation to what occurs through contingencies like that in the case at bar. From the time that R. B. Little & Co. refused to accept the cargo, and the Providence Coal Company consented to receive it, the latter became its real consignee, notwithstanding the bill of lading was not indorsed to it. R. B. Little & Co. might, necessarily, have been considered the consignees, for the purpose of notifying them of the arrival of the vessel. But after they refused to receive the cargo, they no longer remained the consignees for any other substantial purpose. Therefore, even if the Providence

Coal Company might not be regarded as the consignee for all purposes, within a literal construction of the charter party and the bill of lading, yet, under the circumstances, they became such in substance, and the relations of the parties on this question should be treated from that standpoint. Inasmuch as the precedence given to another vessel was given by R. B. Little & Co. after they had refused to accept the cargo, there would be no substantial justice in holding the clause in question applicable to this case; and there is no such condition of the law relating to the construction of mercantile instruments as requires us to stand by the mere letter for the purpose of enforcing what is, in substance, a penalty.

Both parties having appealed, and the appeal of each failing, interest on the amount decreed should not be allowed.

In each case the decree of the district court is affirmed, and the appellee recovers the costs of appeal.